## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

DOROTHY L. KEYS                                                                                       PLAINTIFF

v.                                              NO. 5:06CV00145JLH

MICHAEL J. ASTRUE, Commissioner,[1]
SOCIAL SECURITY ADMINISTRATION                                                       DEFENDANT

### OPINION

Dorothy L. Keys brings this action under 42 U.S.C. § 405(g) and § 1383(c)(3), for judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1382c. Both parties have submitted briefs, and the case is ready for disposition.

### I.

Keys filed an application for SSI benefits on November 19, 2001, alleging disability beginning January 1, 2001, due to migraine headaches, sinus and allergies, depression, and anxiety. (Tr. 90, 126.) Her claims were denied initially and upon reconsideration. (Tr. 71-72,76-77.) Pursuant to Keys' request, a hearing was conducted by the Administrative Law Judge on January 20, 2004, at which Keys and a vocational expert testified. (Tr. 40-62.) On July 12, 2004, the ALJ issued a decision denying Keys' claim for benefits. (Tr. 23-32.) Keys submitted additional information to the Appeals Council, which denied her request for review on April 5, 2006, and the ALJ's decision became the final decision of the Commissioner. (Tr. 6-8.) Keys seeks judicial review of that decision.

---

[1] Michael J. Astrue was sworn in as Commissioner of the Social Security Administration on February 12, 2007. He, therefore, is substituted for Jo Anne B. Barnhart under Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II.

Keys has the burden of proving her disability by establishing a physical or mental impairment lasting at least one year that prevents her from engaging in any substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998); *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.  As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.

*Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

## III.

Keys was born on January 22, 1968, and was 36 years old at the time of the hearing. (Tr. 116.)  She completed the seventh grade. (Tr. 44.)  She has past relevant work experience as a housekeeper/maid. (Tr. 127.)  In 2001, after she applied for disability, she continued to work as a housekeeper/maid at a church and at two motels, earning $6640.53.  In 2002, she was employed for four months in a seasonal job cleaning cabins in a state park, earning $3924.00.  (Tr. 86, 89.)  She stopped working because the job ended.

At the hearing, Keys testified that she suffers from depression and panic attacks.  She said she has migraine headaches every day, cannot sleep at night and cries almost every day. (Tr. 46-49.) She complained of pain in her legs, and has problems sitting, standing and walking.  (Tr. 57-58.)

Keys has four children, all of whom live at home. Two of them receive SSI benefits. (Tr. 55.)

According to medical records from Chicot Family Practice, Keys received treatment for migraine headaches, knee pain, sinus, allergies, and anxiety from June 1999 through October 15, 2003. (Tr. 147-149, 199-209.) She was prescribed a number of medications including Paxil, Zoloft, Lorcet, Valium, and Allegra.

The State disability determination agency sent Keys for a consultative examination by a psychologist, Gilbert Macvaugh, Jr., on June 5, 2002. (Tr. 152-157.) He noted that Keys "may have some anxiety problems," but he was not certain that Keys has a "full-blown anxiety disorder." Keys was coherent and exhibited no bizarre mannerisms during the evaluation. Although he did not administer a full scale IQ test, Dr. Macvaugh gave Keys some tests to determine her intellectual functioning. Dr. Macvaugh opined that if a full scale IQ had been administered, "it may well have been determined [Keys] would be found to function within the mildly mentally retarded category of intelligence, perhaps at the 60 to 65 IQ level or thereabouts. She may well have higher potential though." (Tr. 196.)

Dr. Macvaugh diagnosed Keys with Anxiety Disorder, NOS. He found that Keys was not markedly clinically depressed and that her overall adaptive functioning seemed generally adequate. He concluded that Keys has the "innate mental ability to perform routine repetitive type tasks, accept supervision and maintain concentration and attention if so motivated." (Tr. 156-157.) He believed her prognosis for significant improvement in her mental condition during the next 12 months was guarded. (Tr. 157.)

Keys was referred by the Social Security Administration for intellectual assessment and evaluation of adaptive functioning on July 23, 2002, by Licensed Psychological Examiner,

Kenneth B. Robinson, M.S.[2] (Tr. 158-161.) Keys' test results on the WAIS-III were Verbal IQ of 55, Performance IQ of 53, and Full Scale IQ of 50. Robinson noted that:

> There was evidence of exaggeration or malingering. Ms. Keys gave quick, "don't know" responses as well as a number of one-off, near correct and absurd answers and solutions. She became more and more blatant in her malingering as the session progressed apparently not interested in maintaining a facade of effort. [Tr. 159.]

The examiner did not accept Keys' IQ scores as valid. He suspected, based on Keys' verbal abilities and background, at least an IQ of 70-75. He found that Keys' living skills, language skills, and work history would argue against a diagnosis of Mental Retardation. (Tr. 160.)

Keys' physician referred Keys to Delta Counseling Associates (DCA) for depression. Keys went to DCA on two occasions in November, 2002. She stated that she was depressed and was under a lot of stress since her mother died about two years ago. (Tr. 193.) The social worker who conducted the intake evaluation on November 8, 2002, gave Keys a diagnostic impression of Dysthymic Disorder. (Tr. 196.) She expressed concern that Keys would not seek additional treatment once she received benefits because Keys was "using DCA as a means to file for Social Security benefits."

Keys was evaluated by a DCA psychiatrist, Walter R. Oglesby, M.D., on November 19, 2002. (Tr. 197-198.) He noted that Keys was alert and correctly oriented and he opined that her intelligence is within the average range. He diagnosed her as having Social Phobia (Social Anxiety

---

[2] The report is signed by both Kenneth B. Robinson, M.S., and Charles M. Spellman, Ph.D., a Licensed Psychologist. (Tr. 161.) There is no indication as to who actually evaluated Keys and wrote the report. The ALJ refers to Spellman as having done the evaluation, while the letterhead on which the evaluation is written contains only the name of Robinson. (Tr. 158.) It is likely that Robinson performed the evaluation and wrote the report, which was reviewed by Spellman.

Disorder), Caffeine Intoxication, and Dysthymic Disorder. (Tr. 198.) After the second visit, Keys did not return to DCA or seek any further treatment from DCA.

Dr. Shirlene Hill, Keys' primary physician at Chicot Family Practice, provided additional medical records dated January 19, 2004. (Tr. 190-192.) Dr. Hill stated that Keys' disabling conditions were anxiety disorder with panic attack, depression, gastroesophageal reflux disorder, migraine cephalgia, and leg pain. (Tr. 190.)[3]

Dr. Hill indicated that the disabling conditions were permanent and cannot be removed by treatment but can be substantially reduced by treatment. She noted that Keys is limited in her ability to sit, stand/walk, lift and carry. Dr. Hill stated that Keys had been on several anti-depressants and anti-anxiety medications, including Zoloft, Elavil, and Xanax, with minimum improvement. (Tr. 192.)

Kenneth Gati, M.D., performed an orthopedic consultative examination on April 16, 2004. (Tr. 210-213.) He noted that Keys complained of multiple joint pain in her upper and lower extremities. Dr. Gati found that Keys had full range of motion in her neck, back, shoulders, elbows, wrists, fingers, hips, knees, and ankles. He found no joint swelling and no deformities in her upper or lower extremities, and that Keys had no malalignment to her back. He believed Keys could perform medium work. Dr. Gati assessed the examination as a normal orthopaedic examination with subjective complaints of joint pain. (Tr. 211.)

After the hearing, Keys submitted a Mental Impairment Questionnaire dated August 18, 2005, and completed by Thomas Lewellen. Keys states that Lewellen is a treating physician. However, there

---

[3] In answer to a question about primary disabling conditions, Dr. Hill responded that Keys had anxiety disorder with panic attacks, depression, and gastroesophageal reflux disorder. She stated that Keys' secondary disabling conditions were migraine cephalgia and leg pain. (Tr. 190.) In response to another part of the form, Dr. Hill indicated that Keys' diagnoses were (1) anxiety with panic attacks, (2) depression, and (3) migraine cephalgia. (Tr. 192.)

5

is no indication what kind of physician Lewellen is, where he works, and when or if Lewellen saw or examined Keys. (Tr. 215-219.)

## IV.

The ALJ undertook the familiar five-step analysis in determining whether Keys was disabled. The five-step sequential evaluation determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C.F.R. §§ 416.920 and 404.1520. *See Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003).

The ALJ found that Keys had engaged, since the alleged onset date, in substantial gainful activity for four months in 2002. (Tr. 31.) The ALJ found that Keys has an anxiety disorder and borderline intellectual functioning but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 32.)

The ALJ evaluated Keys' subjective allegations and complaints pursuant to the criteria set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id*. at 1322. The ALJ found Keys' subjective allegations not to be borne out by the overall record or to be fully credible to the extent alleged. (Tr. 32.) The ALJ found that Keys had the residual

6

functional capacity to perform a full range of light, unskilled work.[4]  He also found that she is capable of standing, walking, and sitting each for a total of six hours in an eight-hour day.  Relying on the testimony of the vocational expert that Keys' residual functional capacity is consistent with the requirements of her past relevant work as a housekeeper/maid, the ALJ found Keys not to be disabled.  (Tr. 31-32.)

## V.

First, Keys contends that the Commissioner erred in finding that her joint pain, acid reflux, severe depression, and migraine headaches are non-severe impairments.  Keys states that the record is replete with treatment notes and forms documenting Keys' mental health problems as well as her joint pain and migraine headaches.  There is no doubt that the medical records support Keys' assertion that she regularly complained of these problems, and that she has been on a number of medications for her anxiety, depression and pain.  However, the record does not reflect that these impairments significantly limit Keys' abilities to do basic work activities.

More importantly, the finding by the ALJ at step two had no legal effect.  *See Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001) (sequential evaluation process may end at step two when impairment or combination of impairments would have no more than minimal effect on claimant's ability to work).  The ALJ continued the disability determination process after step 2, fully considering and discussing all Keys' impairments, and making his determination at step 4, not at step 2.

Second, Keys contends that the Commissioner erred in substituting his opinion for that of the medical experts, especially Keys' treating physicians.  "A treating physician's opinion is given

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).  Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  20 C.F.R. § 404.1568(a).

controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the substantial evidence." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citation and internal quotation marks omitted). The ALJ can "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence . . . ." *Id.* at 921 (citation and internal quotation marks omitted).

Dr. Hill, Keys' treating physician, completed a medical assessment dated January 19, 2004, in which she opined that Keys could stand/walk and sit no more than two hours in an 8-hour work day and that Keys could frequently lift a maximum of ten pounds. Dr. Hill also believed Keys to be limited in her ability to stoop, bend, kneel, and squat. (Tr. 190-192.) The ALJ found Dr. Hill's opinions not to be conclusive on the ultimate question of Keys' "medical condition and her ability to carry on gainful activity." (Tr. 29.) The ALJ recognized his ability to reject the opinion of the treating physician and proceeded to explain thoroughly his reasons for doing so. In particular, he noted that, while Keys was being treated in 2001 and 2002 by Dr. Hill, she was able to work. The ALJ found, and the record supports, that Dr. Hill's medical records consist of a recitation of symptoms by Keys, without any specific tests or objective findings to support the existence of the symptoms. Dr. Hill responded to Keys' complaints by prescribing medication to treat the symptoms. Furthermore, objective findings by medical specialists based on their examinations do not support the conclusions of Dr. Hill. The ALJ was justified in finding that Dr. Hill's opinion was not supported by objective medical evidence and is inconsistent with other substantial evidence in the record.

Keys also states that the ALJ erred in concluding that her alleged depression is not severe but occurred in response to the death of her mother. She argues that weight should be given to Dr. Oglesby's diagnosis of Social Anxiety Disorder, Caffeine Intoxication, and Dysthymic Disorder to support a finding that her depression is severe. Keys went to DCA on two occasions, she saw Dr.

Ogelsby on only one of those occasions. Thus, Dr. Ogelsby cannot be considered a treating physician requiring that the ALJ give greater weight to his opinion. Furthermore, Dr. Ogelsby did not opine that Keys was suffering from a severe impairment or that Keys was limited in any way from working. The Court cannot find that the ALJ substituted his judgment for that of the Keys' treating physician or that the ALJ erred in discounting the opinion of Dr. Hill.

Third, Keys contends that the Commissioner failed to apply the requisite factors in *Polaski v. Heckler* in making his credibility determination. The ALJ found that Keys' allegations regarding the severity of her impairments were not fully credible based on the objective medical evidence and the treatment record. (Tr. 30.) He noted that she has not sought mental health treatment on any regular basis, having only been to DCA twice. That she is taking medications, prescribed by her general physician, does not support a finding that Keys suffers from disabling mental problems. None of the mental health professionals who examined Keys found her ability to work to be diminished by her anxiety or depression.

The ALJ also considered Keys' daily activities, including caring for four children, maintaining a clean house, doing laundry, shopping, and driving her car, and found that they were not indicative of a person who was unable to work. *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999) (citing cases) (in finding plaintiff's allegations of pain not credible, ALJ observed that plaintiff engaged in extensive daily activities that were inconsistent with the level of pain alleged). The objective medical findings of Dr. Gati do not support Keys' allegation of disabling pain.

The ALJ examined Keys' work record in assessing her credibility. Despite Keys' assertions of disabling pain and psychological problems, she continued to work and earn a significant amount of money in 2001 and 2002, after her alleged onset date. Working while applying for benefits is inconsistent with complaints of disabling pain. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

9

In addition to Keys' work after the alleged onset date, the ALJ reviewed Keys' work history prior to the alleged onset date. He found that her "rather poor work record" did not enhance her credibility. (Tr. 30.)

The ALJ is not required to discuss each *Polaski* factor. "It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). Here, the ALJ stated that he was considering the factors and then discussed the evidence which was inconsistent with Keys' subjective allegations. Substantial evidence supports the ALJ's credibility determination.

Fourth, Keys asserts that the Commissioner erred in determining that Keys' impairment did not meet or equal Listing § 12.05.

> 12.05   *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> B.   A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D.   A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>   1.   Marked restriction of activities of daily living; or
>   2.   Marked difficulties in maintaining social functioning; or
>   3.   Marked difficulties in maintaining concentration, persistence, or pace; or
>   4.   Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007).

A claimant must provide evidence that demonstrates or supports the onset of mental retardation before age 22.  *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).  Keys has failed to meet this threshold requirement.  She finished the seventh grade, she was not in special education classes, and she indicates that she can speak, read and write English.  She drives and has a valid driver's license.

Furthermore, Keys failed to establish valid IQ scores.  The ALJ discussed the results of the only IQ testing of Keys.  The examiner found evidence of malingering or exaggerating and did not believe the IQ scores in the 50's to be valid.  The examiner suspected a higher IQ score of 70 to 75.  This was consistent with Dr. Macvaugh's opinion that Keys' intelligence was perhaps at the 60 to 65 level, but that she may have higher potential.  The ALJ reviewed Keys' mental status evaluation by Dr. Macvaugh six weeks prior to the IQ testing and noted that Keys was inconsistent with her responses, calling into doubt her credibility during the latter intellectual assessment.  Keys' independent living skills, work history and language skills argue against a finding of mental retardation.  "An ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one time examination by a nontreating psychologist."  *Chunn v. Barnhart,* 397 F.3d 667, 672 (8th Cir. 2005).

The Commissioner did not err in finding that Keys' impairment did not meet Listing 12.05.

Fifth, Keys argues that the Commissioner erred in failing to afford controlling weight to the opinions of Key's treating physicians. This argument was discussed above under Keys' second argument. The objective medical findings do not support the opinions of Dr. Hill.  Furthermore, as noted above, there is no indication that Dr. Lewellen is Keys' treating physician.  His response to a "checklist" questionnaire, without more, is not entitled to any weight. The Appeals Council properly discounted Dr. Lewellen's unsupported opinion.

Finally, Keys argues that the decision is not supported by substantial evidence in the administrative record as a whole. The Court disagrees. The ALJ thoroughly reviewed and discussed the

evidence in the record which supports a finding that Keys is not disabled.  She was working after her alleged onset date; physical and mental examinations failed to reveal any disabling limitations.  The opinions of the specialists, based on objective findings, contradict the conclusory, unsupported opinions of Keys' treating physician.

## CONCLUSION

In sum, the ALJ properly concluded that Keys could perform her past relevant work.  The Court finds that there is substantial evidence to support the Commissioner's decision that Keys is not disabled.  Accordingly, the Commissioner's administrative decision is affirmed.

IT IS SO ORDERED this 25th day of July, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE